# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street, 10th Floor
New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

Tamara Giwa
*Executive Director*

Jennifer L. Brown
*Attorney-in-Charge*

December 3, 2025

***BY ECF***

Hon. Arun Subramanian
United States District Judge
Southern District of New York
New York, NY 10007

Re:    *United States v. Sanchez*, 23 Cr. 400 (AS)

Dear Judge Subramanian:

For the reasons set forth in the defendant's letter motion, and without objection from any interested party, the Court hereby terminates defendant's supervised release. The Court wishes Mr. Sanchez the best of luck for the future ahead. The Clerk of Court is respectfully directed to close the motion at Dkt. 26.

SO ORDERED.

Arun Subramanian, U.S.D.J.
Dated: December 12, 2025

Without objection from Mr. Sanchez's probation officers, Sandra Osman and Karina Vilefort, and without objection from the government, Assistant U.S. Attorney Rebecca Delfiner, I write to request early termination of Jarlin Javier Sanchez's supervised release. As of the writing of this letter, Mr. Sanchez has completed two and a half years of his three-year supervised release term. Although Mr. Sanchez struggled during the early part of his supervision with drug relapse, Mr. Sanchez has continued to show "tremendous growth" – a trajectory Your Honor has previously taken note of.  *United States v. Sanchez*, 23 Cr. 400 (AS), ECF No. 22 at p. 28 (S.D.N.Y. July 8, 2024). Mr. Sanchez has continued on this path of success that he has forged for himself.  Through his hard work and commitment to maintaining sobriety, Mr. Sanchez has demonstrated that he no longer requires the rehabilitation and reintegration services that supervised release provides. As such, the interests of justice warrant early termination of Mr. Sanchez's term of supervised release.

## **BACKGROUND**

On May 5, 2023, in the Eastern District of North Carolina, Mr. Sanchez was sentenced to twenty-seven months' imprisonment to be followed by three years' supervised release after Mr. Sanchez pleaded guilty to one count of aggravated identity theft and one count of conspiracy to defraud the United States. Mr. Sanchez's supervised release term began in May 2023 and is set to expire in May 2026. Since August 2023, Mr. Sanchez has been supervised in the Southern District of New York, where he resides.

Since his release into the community, Mr. Sanchez has maintained steady employment as a delivery driver and trainer at RDS Delivery in Manhattan, on a contract with NYU Hospital.[1] He has worked there since August 2024, and has been promoted to training other drivers. His

---

[1] Mr. Sanchez's employment has been verified through paystubs.

1

boss and his customers praise Mr. Sanchez's friendly demeanor and strong work ethic. Using his income from his employment, Mr. Sanchez has paid monthly restitution payments and supported his mother and children.

In addition to working full-time, Mr. Sanchez has been committed to maintaining his sobriety, with consistently negative bi-weekly urine tests, since he successfully completed a rehabilitation program in June 2024. At the Samaritan Daytop Village rehabilitation program in upstate New York, Mr. Sanchez was chosen out of forty people for the Matty Pennacchia and Catherine Jackson Recovery Coach Training Scholarship Award. *See* Exhibit D, Certificate of Scholarship Award to Jarlin Sanchez. This was an award he won for an essay he wrote on recovery and to commend his outstanding efforts during the rehabilitation program.

Ultimately, Mr. Sanchez hopes to have his supervised release terminated so he can freely visit his grandmother and extended family in the Dominican Republic. *See* Exhibit A, Jarlin Sanchez Letter to the Court. Mr. Sanchez's grandmother is very sick, and he deeply misses his family there. He has not seen her in almost 4 years and wishes to be able to visit as soon as he is able. Without supervised release, Mr. Sanchez would be able to come and go without the need for prior court-approved travel authorization and probationary check-ins from another part of the world.

## **LEGAL STANDARD**

"Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000). Section 3583(e) gives the Court authority to terminate supervision at any time after the expiration of one year, if such action is "warranted by the conduct of the defendant released and the interests of justice." 18 U.S.C. § 3583(e).[2] When determining whether to grant such an application, the Court is instructed to "consider 'the factors set forth in [18 U.S.C.] §§ 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)." *United States v. Harris*, 689 F. Supp. 2d 692, 694 (S.D.N.Y. 2010) (quoting 18 U.S.C. § 3583(e)); *see also* United States District Court for the Southern District of New York Probation Office, *Early Termination from Supervision* (Aug. 2018) ("[§] 3583(e)(1) does not require 'exceptional conduct' to justify early termination. Instead, a court must simply be satisfied that the termination is warranted and is in the interest of justice."). Notably, when deciding whether to modify or revoke a term of supervised release, the Court may not consider § 3553(a)(2)(A): the need "to reflect the seriousness of the offense, to promote

---

[2] As the Court is likely aware, the United States Sentencing Commission has adopted amendments to the Sentencing Guidelines related to supervised release.  Notably, it added a new policy statement at §5D1.4 (Modification, Early Termination, and Extension of Supervised Release (Policy Statement). This new policy statement encourages a court, as soon as practicable after a defendant's release from imprisonment, to conduct an individualized assessment to determine whether it is warranted to modify, reduce, or enlarge the conditions of supervised release. Additionally, any time after the expiration of one year of supervised release, it would encourage a court to terminate the remaining term of supervision and discharge the defendant if the court determines, following consultation with the government and the probation officer, that the termination is warranted by the conduct of the defendant and the interest of justice.

respect for the law, and to provide just punishment for the offense." The Supreme Court in *Esteras v. United States* affirmed that §3583(e) is a forward-looking statute which does not consider retributive or punitive purpose of sentencing, but rather the "forward-looking ends of sentencing which are rehabilitative, providing individuals with post-confinement assistance." *Esteras v. United States*, 145 S.Ct. 2031, 2041 (2025).

Supervised release's rehabilitative purpose has been noted by many courts that have addressed the issue. The Supreme Court has indicated that, "[s]upervised release, in contrast to probation, is not a punishment in lieu of incarceration." *United States v. Granderson*, 511 U.S. 39, 50 (1994). The Court further elaborated that supervised release is meant "to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 60 (2000). The Court then used this rationale to hold that prison time and supervised release are not "interchangeable." *Id.* at 60. This sharp distinction between supervised release and incarceration illustrates the rehabilitative, and not punitive, purpose of supervised release.

The Second Circuit has also clearly established the rehabilitative purpose of supervised release:

> Supervised release was established by the Sentencing Reform Act of 1984, as amended, 18 U.S.C. § 3551 et seq., and was designed "to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short period in prison for punishment or other purposes but still needs supervision and training programs after release." S.Rep. No. 98–225, at 124 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3307…Supervised release is not, fundamentally, part of the punishment; rather, its focus is rehabilitation.

*United States v. Aldeen*, 792 F.3d 247, 252 (2d Cir. 2015), as amended (July 22, 2015). District courts in this circuit have noted that "[t]he purpose of federal supervised release is to assist people who have served prison terms with rehabilitation and reintegration into the law-abiding community." *United States v. Trotter*, 321 F. Supp. 3d 337, 339 (E.D.N.Y. 2018). *Trotter* makes clear that "[s]upervised release is designed to assist with rehabilitation, not to punish" and notes that courts are directed by Congress, in most cases, "to determine which defendants would benefit from the rehabilitative purposes of supervised release." *Id.* at 345. Those who no longer need the rehabilitative purposes of supervised release, then qualify for early termination.

## The Interests of Justice and Mr. Sanchez's Conduct While on Supervision Warrants Early Termination of His Supervised Release.

Early termination is appropriate in Mr. Sanchez's case. Mr. Sanchez has no doubt struggled in his life to overcome addiction and build a stable life for himself and his family. Indeed, those struggles were evident at the beginning of Mr. Sanchez's term of supervised release when he relapsed. That said, Mr. Sanchez is a long way from when he was first before this Court and working through his addiction. *See* Exhibit B, Carolin Sanchez Letter to the Court. After completing his rehabilitation program at Samaritan Daytop Village, Mr. Sanchez has

3

consistently provided negative urine tests.[3]

Probation Officer Sandra Osman has confirmed that Mr. Sanchez has been complying with all conditions of his supervised release. In addition to his employment, Mr. Sanchez finds time to spend with his sons.  He also goes to therapy consistently, with his therapist, Cara Mallea, praising his dedication to making positive changes in his life, and maintaining his sobriety to be a present and loving father. *See* Exhibit C, Carla Mellea Letter to the Court. Mr. Sanchez's conduct on supervised release "demonstrates that continued court supervision is unnecessary to achieve 'general punishment goals,' as well as the goals of promoting respect for the law, deterring criminal conduct by [Mr. Sanchez], and protecting the community from future harm by [him]." *United States v. Noel*, 2021 WL 4033769, at \*2 (E.D.N.Y. Sept. 3, 2021). The resources of the Probation Department, which have been particularly taxed as of late, would be better spent on an individual who needs supervision and can benefit from the services offered by a probation officer —not on Mr. Sanchez.

Early termination of supervised release is a mechanism that courts in this district have employed to terminate unnecessarily lengthy terms of supervised release for individuals who have accomplished the rehabilitative purposes that supervised release was intended to serve.  *See, e.g.*, *United States v. Cruz*, 19 Cr. 770 (JMF) (S.D.N.Y. 2025) (granting early termination of supervised release); *United States v. Goenaga*, 18 Cr. 840 (VEC) (S.D.N.Y. 2025) (same); *United States v. Sabaly*, 20 Cr. 473 (VM) (S.D.N.Y. 2025) (same); *United States v. Baez*, 22 Cr. 364 (KPF) (S.D.N.Y. 2025) (same); *United States v. Sun*, 21 Cr. 343 (SHS) (S.D.N.Y. 2025) (same); *United States v. Crump*, 19 Cr. 785 (KMK) (S.D.N.Y. 2025) (same); *United States v. McKelvey*, 17 Cr. 511 (SHS) (S.D.N.Y. 2025) (same); *United States v. Cohen*, 23 Cr. 134 (VSB) (S.D.N.Y. 2025) (same); *United States v. Bonilla Acevedo*, 17 Cr. 604 (CM) (S.D.N.Y. 2025) (same); *United States v. Smith*, 20 Cr. 244 (LJL) (S.D.N.Y. 2025) (same); *United States v. Mangual*, 23 Cr. 429 (JGK) (S.D.N.Y. 2024) (same); *United States v. Grullon*, 23 Cr. 106 (PGG) (S.D.N.Y. 2023) (same); *United States v. Zavala*, 18 Cr. 735 (KPF) (S.D.N.Y. 2023) (same); *United States v. Enriquez*, 20 Cr. 455 (RA) (S.D.N.Y. 2023) (same); *United States v. Pina*, 22 Cr. 27 (VSB) (S.D.N.Y. 2023) (same); *United States v. Misulovin*, 22 Cr. 592 (RA) (S.D.N.Y. 2023) (same); *United States v. Rosario*, 11 Cr. 932 (PGG) (S.D.N.Y. 2023) (same); *United States v. Bills*, 09 Cr. 507 (KMW) (S.D.N.Y. 2023) (same); *see also United States v. Young*, 20 Cr. 201 (KMW) (S.D.N.Y. 2024) (terminating probation early). The practice is similar in other districts within this Circuit as well as those courts have similarly recognized the psychological toll of supervision, acknowledging the "significance to defendants of 'being off the papers' and becoming one's own person without reporting requirements and without having to request permission to engage in travel or other activities.  Thus, terminating supervision, i.e., 'the papers,' represents a form of freedom…" *United States v. Roman et al.*, 06 Cr. 268-26 (JBA) (D. Conn. Jan. 4, 2023), Order Granting Defendant's Motion for Early Termination of Supervised Release at 2.  Here, it would afford Mr. Sanchez the benefit of reuniting with his grandmother in the Dominican Republic without restriction and allow him to finally reunite with his family there. *See, e.g.*, *United States v. Bonilla Acevedo*, 17 Cr. 604 (CM) (S.D.N.Y. 2025) (granting early termination of supervised release where one of the defendant's primary reasons for early termination were his limitations on travel to visit his home country of the Dominican Republic with his

---

[3] Mr. Sanchez provided defense counsel with his negative urine tests and can be provided to the Court upon request.

4

family); *United States v. Gonzalez*, 01 Cr. 763 (VM) (S.D.N.Y. 2014) (this Court granted early termination where the defendant sought to facilitate his return to the Dominican Republic).

Additionally, as Judge Dearie in the Eastern District noted, early termination of supervision is important to "reward [a defendant's] determination to lead a responsible life and the success he has already realized" as it also "remind[s] others that such laudable progress is possible and will reap rewards." *United States v. Jiminez*, 2021 WL 535208 (E.D.N.Y. Feb. 12, 2021). Thus, in addition to rewarding Mr. Sanchez for his hard work in making this a successful supervisory term, terminating Mr. Sanchez's supervision would meaningfully send a message to other defendants on supervision – that early termination of supervision is possible with hard work and full compliance.

## CONCLUSION

Mr. Sanchez's performance on supervision, his stable employment, and his commitment to his sobriety and mental health make clear that he has successfully reintegrated into the community. Consistent with Probation's position and the government's position, given the progress Mr. Sanchez has made in the community since June 2024, early termination of his supervised release is warranted and in the interest of justice.

Thank you for your time and attention to this matter.

Respectfully Submitted,

*Marisa K. Cabrera*

Marisa K. Cabrera, Esq.
Assistant Federal Defender
Usha Konduri, Legal Intern
Tel.: (212) 417-8730

Cc:     AUSA Rebecca Delfiner

PO Sandra Osman

# EXHIBIT

# A

To Whom It May Concern,

My name is Jarlin Sanchez, and I am writing to respectfully request early termination of my probation. I want to express my deepest gratitude for the opportunity probation has given me to rebuild my life and become a better person. Over the past year and three months, I have remained completely sober, complied with all requirements, and worked consistently to support myself and my family.

I am also a father of two boys, J████ and A████████, who are my greatest motivation every single day. I take care of them and do my best to be a positive role model in their lives. Maintaining steady work and sobriety has helped me build a stable environment for them, something I'm very proud of.

Another reason I am asking for early termination is because my family lives in the Dominican Republic, and I have not been able to visit them due to probation restrictions. My grandmother is very sick, and it has been almost four years since I last saw her. Not being able to be there for her and my family has been emotionally difficult.

I want to make it clear that I take full responsibility for my past mistakes. Probation has helped me reflect, grow, and prove to myself that I can live a disciplined, productive, and positive life. I continue to pass all drug tests every two weeks and have not had any violations. I believe I have demonstrated the accountability, responsibility, and commitment that probation is designed to encourage.

I respectfully ask for the Court's consideration in granting early termination of my probation so I can continue providing for my children, support my family, and visit my grandmother while she is still with us. I assure you that I will continue to live in a lawful and responsible way.

Thank you for your time and understanding.

Respectfully,
Jarlin Sanchez

# EXHIBIT

# B

11/06/2025

**Re: Jarlin Sanchez**

Dear Honorable Judge,

I am writing this letter in support of my brother Jarlin Sanchez, who is currently before the court. I want to share a little about the man I know him to be and the positive changes he has made in his life over the past few years.

Jarlin has faced significant struggles with addiction in the past, but I am proud to say that he has worked very hard to turn his life around. He has now been clean and sober for almost two years, showing a deep commitment to his recovery and personal growth. During this time, I have seen tremendous progress in his attitude, responsibility, and dedication to building a stable and meaningful life.

For over a year, Jarlin has been steadily employed at RDS as a driver, where he has proven to be reliable, hardworking, and professional. He takes pride in his work and understands the importance of maintaining steady employment as part of his journey toward stability and self-improvement.

Most importantly, Jarlin has been focused on being a better father, brother, and son. He has rebuilt relationships within our family and is an active, loving presence in his children's life. His dedication to his family and his ongoing effort to become a positive role model truly reflect the person he is striving to be.

I have seen firsthand how much effort Jarlin has put into changing his life. He continues to seek guidance and support when needed, and I believe he is genuinely committed to staying on the right path. Our family stands behind him fully and continues to encourage his growth and progress.

I respectfully ask that the Court take into consideration Jarlin's efforts, his sustained sobriety, and the positive direction his life has taken. I have no doubt that he will continue to make good choices and contribute positively to his family and community.

Thank you for your time and consideration.

Respectfully,

*Carolin Sanchez*

# EXHIBIT C



462 First Avenue
New York, NY 10016

October 20th, 2025

To Whom It May Concern,

The following letter of support is in reference to Jarlin Sanchez. As Mr. Sanchez's primary therapist at Bellevue Hospital Chemical Dependency Outpatient Program (CDOP), I have had the privilege of working closely with Mr. Sanchez since he was admitted to the program in June 2024. Jarlin was referred to Chemical Dependency Outpatient Program (CDOP) for outpatient substance use and mental health treatment following his admission to SDV Veritas House transitional housing after completion of treatment at Cape Road on 6/4/24 starting the intake process at CDOP on 6/6/24 and was admitted to CDOP on 6/21/24.

Jarlin has demonstrated dedication and consistent progress while maintaining his sobriety and attending outpatient mental health and recovery services. While I did not meet Jarlin immediately after his release from federal prison, it is clear how his compliance with mandated substance use treatment (Cornerstone of Medical Arts Center's Rehab from 12/18/23-1/16/24), residential treatment (Cape Road Facility 1/16/24-5/21/24), sober living (SDV Veritas House from 6/4/24-12/14/24) and continued voluntary outpatient treatment at CDOP has positively impacted Jarlin as he has maintained sobriety since December 2023. In my time working with Jarlin he has demonstrated motivation and commitment to treatment while continuing to positively improve his life, obtaining employment, maintaining sobriety and having multiple long-term goals to better himself and also to provide for his family and children.

Jarlin is pleasant, reliable, cooperative, insightful, hopeful, hardworking, and I believe he has made lasting positive changes to his life. He has been motivated to ensure improvement to his wellbeing and continues to work on himself in his recovery by remaining abstinent from substances. He also often reflects on past behaviors when using to see the progress he has made, and how much different his life is today with his sobriety. Jarlin is able to identify and manage triggers and cravings, and engages actively in relapse prevention by staying mindful of people, places and things, monitoring when he may encounter situations which may have been triggering in the past. With his dedication and motivation towards continued sobriety and interest in assisting others in recovery, Jarlin completed Recovery Coach training and ethics training on 8/14/24 after being awarded with the Matty Pennacchia & Catherine Jackson Recovery Coach Training Scholarship Award from Samaritan Daytop Village. Jarlin has long term goals towards obtaining employment as a recovery coach with motivation to help others in his sobriety, but more recently obtained employment as a delivery driver with RDS Delivery in October 2024. Jarlin has been an exemplary and dependable employee throughout his year of employment, and has been selected to train multiple co-workers given his experience and dedication to his role.

Despite his busy work schedule where he sometimes works 6 days per week, Jarlin has consistently made time for therapy to express his thoughts, feelings and emotions in session. Jarlin has been exemplary in his attendance to appointments at CDOP, engaging meaningfully in individual counseling sessions and has also attended every scheduled follow-up appointment with psychiatry and primary care physicians to address his mental and physical health. He has been adherent to medications as prescribed (including medication assisted treatment/MAT with sublocade injections)

and has insight into benefits of continued compliance while also developing positive sober coping skills to help with stress and anxiety. Jarlin is also a dedicated father to his two sons, and spends time with them every weekend. He often reflects on how with his sobriety he is able to spend time with them and supports them as they accomplish multiple milestones and positive experiences together. Jarlin frequently shares how proud he is to provide for his children and for his family, and how his relationship with his parents, siblings and mother of his children continues to improve with his sobriety and ability to maintain stable employment.

In conclusion, Jarlin has been an exemplary client at CDOP, a dedicated employee and continues to function well in the community while remaining committed to treatment and motivated continued self-improvement and maintaining positive changes to his life. He acknowledges his past mistakes and sees the benefits of sobriety, while also looking forward to achieving his future goals in relation to his recovery, supporting his family, and finding employment where he can help others in their recovery.

Please feel free to reach out if you have any questions or if there is anything I can do to help advocate for or support patient.

Sincerely,
Cara Mellea, LCAT, ATR-BC
Phone: (212) 562-7090
Email: melleac@nychhc.org

# EXHIBIT
# D

# *Samaritan Daytop Village & The Alumni Association*

## MATTY PENNACCHIA CATHERINE JACKSON RECOVERY COACH TRAINING SCHOLARSHIP AWARD

### HEREBY PRESENTED TO

## *Jarlin Sanchez*

in recognition of his outstanding efforts and valuable contribution to the Samaritan Daytop Village Alumni Association

July 20, 2024
**Date**

James Hollywood, Samaritan Daytop Village
Vice-President, Residential and Recovery Services

David Tanner, President, Samaritan Daytop Village
Alumni Association

